IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
Record No. 22-4536

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RESHOD JAMAR EVERETT,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

APPELLANT'S REPLY BRIEF

Paul K. Sun, Jr.
Kelly Margolis Dagger
Ellis & Winters LLP
Post Office Box 33550
Raleigh, North Carolina 27636
(919) 865-7000

<u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     THE DISTRICT COURT COMMITTED REVERSIBLE ERROR
BY DENYING MR. EVERETT'S MOTION TO SUPPRESS
EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Police Did Not Conduct a Proper Protective Sweep. . . . . 2

        1.    The police lacked probable cause that Mr. Everett
resided at 1080 Ronald Reagan Drive. . . . . . . . . . . . . . . 2

        2.    The police lacked a reasonable belief that third parties
hiding at the home posed a danger. . . . . . . . . . . . . . . . . 3

        3.    The protective sweep was invalid because it lasted
longer than it took to complete Mr. Everett's arrest
and depart 1080 Ronald Reagan Drive. . . . . . . . . . . . . 7

    B.    The Government Cannot Rely on the Search Warrant Because
There Was No Testimony that the Police Would Have Sought a
Search Warrant Without Illegally Obtaining Evidence from the
Sweep, and Because Officer Budden's Affidavit Did Not
Establish Probable Cause Without the Tainted Evidence. . . . . 9

    C.    The Good Faith Exception to the Warrant Requirement
Does Not Apply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.    The Government Cannot Show that the Error in Admitting
Evidence Seized at 1080 Ronald Reagan Drive Was
Harmless Beyond a Reasonable Doubt. . . . . . . . . . . . . . . . . 15

II.     THE GOVERNMENT OFFERED INSUFFICIENT EVIDENCE
        TO CONVICT MR. EVERETT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        A.     The Government Did Not Prove Count 4, Aiding and
               Abetting the Possession With Intent to Distribute Marijuana
               and Cocaine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.     The Government Did Not Prove Count 5, Possession of a
               Firearm in Furtherance of a Drug Trafficking Crime. . . . . . 17

        C.     The Government Did Not Prove Count 6, Possession With
               Intent to Distribute THC and Tramadol. . . . . . . . . . . . . . . . 17

III.    THE DISTRICT COURT IMPOSED A PROCEDURALLY
        UNREASONABLE SENTENCE WHERE THE GOVERNMENT
        DID NOT PROVE THE DRUG QUANTITY UNDERLYING
        THE GUIDELINES RANGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        A.     The District Court Erroneously Calculated the Guidelines
               Range Based on Austin Murray's Statement. . . . . . . . . . . . . 19

        B.     The District Court's Procedural Error Was Not Harmless. . . 20

IV.     MR. EVERETT IS ENTITLED TO RESENTENCING BECAUSE
        HIS 480- MONTH SENTENCE IS SUBSTANTIVELY
        UNREASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ii

## TABLE OF AUTHORITIES

<u>CASES</u>

*Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006). . . . . . . . . . . . . . . . . . . . . . . . 7

*Devenpeck v. Alford*, 543 U.S. 146 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gall v. United States*, 552 U.S. 38 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Maryland v. Buie*, 494 U.S. 325 (1990).. . . . . . . . . . . . . . . . . . . . . . . 2, 3, 6, 7-8, 9

*Molina-Martinez v. United States*, 578 U.S. 189 (2016).. . . . . . . . . . . . . . . . . . 22

*Murray v. United States*, 487 U.S. 533 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Payton v. New York*, 445 U.S. 573 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Peugh v. United States*, 569 U.S. 530 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Scott v. United States,* 436 U.S. 128 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008). . . . . . . . . . . . . . . . . 26-27

*United States v. Basham*, 561 F.3d 302 (4th Cir. 2009). . . . . . . . . . . . . . . . . . . . 16

*United States v. Brinkley*, 980 F.3d 377 (4th Cir. 2020).. . . . . . . . . . . . . . . . . 3, 13

*United States v. Carter*, 564 F.3d 325 (4th Cir. 2009). . . . . . . . . . . . . . . 21, 22, 24

*United States v. Catala*, 134 F. App'x 617 (4th Cir. 2005). . . . . . . . . . . . . . . . . 20

*United States v. Fisher,* 912 F.2d 728 (4th Cir. 1990). . . . . . . . . . . . . . . . . . . 17-18

*United States v. Ford*, 56 F.3d 265 (D.C. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Gomez-Jimenez*, 750 F.3d 270 (4th Cir. 2014).. . . . . . 20, 21, 22-23

iii

*United States v. Gray*, Nos. 94-5776, 95-5950, 94-5923,
  95-5801, 94-5932, 1996 WL 397417 (4th Cir. July 17, 1996). . . . . . . . . . 19

*United States v. Green*, 996 F.3d 176 (4th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Hall*, 858 F.3d 254 (4th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Hill*, 776 F.3d 243 (4th Cir. 2015). . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Howard*, 773 F.3d 519 (4th Cir. 2014). . . . . . . . . . . . . . . . . . . 25

*United States v. Jones*, 677 F.3d 477 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Laudermilt*, 677 F.3d 605 (4th Cir. 2012). . . . . . . . . . . . . . . . 5, 8

*United States v. Lalor*, 966 F.2d 1578 (4th Cir.1993). . . . . . . . . . . . . . . . . . . . 12

*United States v. Lewis*, 958 F.3d 240 (4th Cir. 2020). . . . . . . . . . . . . . . . . . . . . 20

*United States v. Leon*, 486 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 24

*United States v. Maxi*, 886 F.3d 1318 (11th Cir. 2018). . . . . . . . . . . . . . . . . . . 11

*United States v. McCall*, 740 F.2d 1331 (4th Cir. 1984). . . . . . . . . . . . . . . . . . 2-3

*United States v. McCoy*, 773 F. App'x 164 (4th Cir. 2019). . . . . . . . . . . . . . . . . 9

*United States v. Montes-Flores*, 736 F.3d 357 (4th Cir. 2013). . . . . . . . . . . . 20-21

*United States v. Morrison*, 991 F.2d 112 (4th Cir. 1993). . . . . . . . . . . . . . . . . . 16

*United States v. Shreeves*, 698 F. App'x 131 (4th Cir. 2017). . . . . . . . . . . . . . . 14

*United States v. Wilson*, 860 F. App'x 657 (11th Cir. 2021). . . . . . . . . . . . . . . 26

OTHER AUTHORITIES

U.S. Const. amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26, 27

18 U.S.C. § 3661. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

U.S.S.G. § 6A1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

S.C. Code Ann. § 1-3-600. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

S.C. Code Ann. § 16-3-29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NCDHHS, *2018-2020 State-Level Life Expectancies by Age, Sex, Race and Race by Sex.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**ARGUMENT**

I.    THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY
DENYING MR. EVERETT'S MOTION TO SUPPRESS EVIDENCE.

The Government does not dispute that warrantless searches of a home are
"presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980);
*see* Gov't Br. *passim*. The Government likewise does not dispute that the police
searched the home at 1080 Ronald Reagan Drive without a warrant. JA109; *see*
Gov't Br. *passim*. Mr. Everett showed in his opening brief that the district court
erred when it denied his suppression motion where Government could not excuse
the warrantless search at Ronald Reagan Drive as a valid protective sweep. In its
response, the Government fails to establish that the police had a reasonable belief
that third parties were hiding in the home and posed a threat to the officers. The
Government cannot defend the district court's ruling under the independent source
doctrine where the police did not testify that they would have sought a search
warrant without the illegal search, and the illegally obtained evidence was
necessary to the finding of probable cause for the search warrant. The facts do not
support application of the good faith exception to the warrant requirement, and the
admission of the illegally seized evidence was not harmless.

A.    The Police Did Not Conduct a Proper Protective Sweep.

1.    The police lacked probable cause to believe that Mr. Everett resided at 1080 Ronald Reagan Drive.

*Maryland v. Buie*, 494 U.S. 325 (1990), defines when the police may conduct a protective sweep in connection with service of an arrest warrant. *See* Opening Br. 37; Gov't Br. 24-25. The Government, however, could not justify the protective sweep under *Buie* where the police lacked probable cause to believe that Mr. Everett resided at Ronald Reagan Drive. *See* Opening Br. 38-39. The police knew that Mr. Everett had leased an apartment in March 2019, JA410-411, and the Government does not challenge Mr. Everett's showing that the police were uncertain where Mr. Everett resided, Opening Br. 38.

In arguing that there nevertheless was probable cause to believe Mr. Everett resided at Ronald Reagan Drive, the Government cites service paperwork for Mr. Everett's truck seized during the search of Apartment 5 that had the Ronald Reagan Drive address, but there was no evidence that the paperwork "list[ed] the house as Everett's *home address*." Gov't Br. 25 (emphasis added). The Government also offered no evidence as to when the paperwork was dated, undermining its value in the probable cause calculus. *See*, *e.g.*, *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984) ("[T]here is no question that time is

2

a crucial element of probable cause.").  Likewise, the evidence that the police

found Mr. Everett's name in the Public Works Commission database for 1080

Ronald Reagan Drive, *see* Gov't Br. 19, 25, did not establish probable cause that

he resided at that address when the police executed the arrest warrant.  The

Government also argues that the police observed Mr. Everett and his truck at the

home on July 17, *see id.*, but that observation did create probable cause to believe

that Mr. Everett resided there when the Government admits that Victoria Everett

operated a daycare at that location, *see id*.  Entry into Mr. Everett's home to effect

his arrest was improper.  *See United States v. Brinkley*, 980 F.3d 377, 386-88 (4th

Cir. 2020).[1]

> 2.    The police lacked a reasonable belief that third parties hiding at
>        the home posed a danger.

The police also lacked a reasonable belief that the upstairs of the home

harbored a person or persons posing a danger to the officers or others.  *See*

*Maryland v. Buie*, 494 U.S. at 327; Opening Br. 37-40.  The five reasons the

Government discusses in its response brief, Gov't Br. 26, do not establish the

---

[1] The Government incorrectly argues that Mr. Everett must show plain error because he "did not challenge the legality of the entry and arrest below."  Gov't Br. 25.  Mr. Everett challenged the warrantless search before the district court, and "once a defendant raises a *claim* before the district court, it may make a new *argument* for that claim on appeal without triggering plain error review."  *United States v. Green*, 996 F.3d 176, 184 (4th Cir. 2021).

3

required "reasonable basis" for the officers to believe that there were people

upstairs "who might resort to violence when incited by" Mr. Everett's arrest, *see*

*United States v. Jones*, 667 F.3d 477, 484 (4th Cir. 2012).

First, the police had information that Mr. Everett was involved in a "large-

scale drug-trafficking operation" with armed confederates, Gov't Br. 26; however,

the known confederates had been arrested, JA97 (Davis); JA540 (Murray and

Godfrey), and thus could not have been hiding upstairs.  The Government's

second reason, that the police supposedly had reason to believe Mr. Everett had

firearms in his home, is inapposite because the prospect that Mr. Everett could be

armed is not the issue.  *See United States v. Jones*, 667 F.3d at 484 ("The linchpin

of the protective sweep analysis is not the threat posed by the arrestee, [but] the

safety threat posed by the house, or more properly by unseen third parties in the

house." (quotation omitted; alteration in *Jones*)).  The Government's three other

reasons are a single fact restated—that the police did not know if there were others

inside the home.  *See* Gov't Br. 26 (officers "had no way to observe inside the

house to see who may have been inside"; surveillance cameras "suggested that

others inside the house could have been watching the officers"; and "when officers

entered the house, they were indeed surprised by an unknown and unexpected

person").  However, "lack of information cannot provide an articulable basis upon

which to justify a protective sweep." *United States v. Jones*, 667 F.3d at 484 (cleaned up). Ms. Sinkler's presence in the home, *see* Gov't Br. 22, 26, 27, does not support the officers' decision to conduct a protective sweep. *See United States v. Ford*, 56 F.3d 265, 269 n.6 (D.C. Cir. 1995) (reversing denial of motion to suppress and explaining that "[p]oor lighting, a visibly upset mother, and another unknown woman, however, have nothing to do with a belief that the area harbors an individual posing a danger to those on the arrest scene" (quotation omitted)).

    *United States v. Laudermilt*, 677 F.3d 605 (4th Cir. 2012), does not support the district court's ruling that the police conducted a valid protective sweep. *See* Gov't Br. 25-29. In *Laudermilt*, the police responded to a report that the defendant was threatening his girlfriend and her family with a gun at a residence where police had responded to past domestic disputes. 677 F.3d at 608. At the time the police conducted the sweep, "there was conflicting information regarding how many occupants might be in the house." *Id.* at 609. The police determined that only the defendant's brother was inside the house, but he was "freaking out." *Id.* at 608, 612. In contrast to the "clear, objective evidence of an emergent situation involving domestic violence and a firearm" in *Laudermilt*, *id.* at 612, in this case the police had surveilled Ronald Reagan Drive for over six hours and observed that a daycare was operating there, JA99, JA118-119; had no

5

information suggesting any violence and no specific information that a firearm was present, JA93-148; and found two immediately compliant women and children inside, JA139; Gov't Exs. 2, 4.  The police did not have the "reasonable belief" that *Buie* requires to justify a protective sweep, 494 U.S. at 327.

The actions of the police were inconsistent with a reasonable belief that unseen third parties inside the home posed a threat.  *See* Opening Br. 39-40.  The police did not conduct a protective sweep of the downstairs, JA121, or the garage, JA122.  Mr. Everett argued that the police allowed Ms. Everett to come downstairs without escort before the protective sweep began.  Opening Br. 11, 39.  The Government says "it is not clear from the record that officers did, in fact, allow Everett's wife to go upstairs unaccompanied."  Gov't Br. 28.  According to Officer Budden, Sergeant Ward was standing at the base of the stairs "to give visual observation when [Ms. Everett and her children] came downstairs to make sure they didn't pose a threat."  JA117.  Officer Budden testified that the video showed him and his colleagues beginning the protective sweep once Ms. Everett came downstairs.  JA104.  This Court can properly consider the actions of the officers in deciding whether the police could have had a reasonable belief that third parties upstairs posed a danger.  *See Scott v. United States*, 436 U.S. 128, 137 (1978).

The Government mischaracterizes Mr. Everett's arguments by suggesting

6

that they focus on the "state of mind" of the police. *See* Gov't Br. 28 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The question in any Fourth Amendment challenge is the reasonableness of the actions of the police, and this Court will view the facts and circumstances objectively. *E.g.*, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006). According to Officer Budden, conducting a protective sweep is the officers' "common practice" when executing an arrest warrant. *See* Opening Br. 40 (citing JA100); *see also* JA100, JA125, JA126. Mr. Everett did not cite Officer Budden's statement "out of context." Gov't Br. 27. The "context," provided by the Government's leading question that prompted Officer Budden's testimony, is the context in this case—the execution of an arrest warrant. *See* JA100 ("Q: And based on your training and experience, is it an inherently dangerous situation to execute an arrest warrant at a person's house?"). Mr. Everett's argument that this "common practice" explains the decision to conduct the protective sweep when the facts articulated by the Government do not justify a protective sweep, does not invite improper inquiry into what subjective motivation the officers had. *See Brigham City, Utah v. Stuart*, 547 U.S. at 404.

3.      The protective sweep was invalid because it lasted longer than it took to complete Mr. Everett's arrest and depart 1080 Ronald Reagan Drive.

The Government concedes that under *Buie*, a protective sweep may last "no

longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." 494 U.S. at 335-36; *see* Gov't Br. 29. The police arrested Mr. Everett immediately as he opened the door at 1080 Ronald Reagan Drive. JA99. Rather than leave the premises with Mr. Everett under arrest, multiple additional police officers entered the home and then conducted the protective sweep. JA116; Gov't Ex. 2. The protective sweep in this case thus fails under *Buie* because the police did not even begin the protective sweep until after the time needed to arrest Mr. Everett and leave the premises. *See* 494 U.S. at 335-36.

Citing *Buie* and *Laudermilt,* the Government argues that "a protective sweep may occur after a suspect is arrested," but neither case supports the Government here. *See* Gov't Br. 29. The Supreme Court articulated the standard for a protective sweep in *Buie*, but because the lower court had not applied the right standard, the Supreme Court remanded the case and had no occasion to consider whether a protective sweep, if warranted, extended too long. 494 U.S. at 336-37. In *Laudermilt*, police responded to a reported threat and "[a]t the time the officers seized Laudermilt, they reasonably believed at least one other person and a firearm were inside the house." 677 F.3d at 611. In this case, the police had no reports of threats or firearms at Ronald Reagan Drive. Extending *Laudermilt* to

8

the facts here would be inconsistent with this Court's obligation to follow the

binding precedent of *Buie*. *See*, *e.g.*, *United States v. McCoy*, 773 F. App'x 164,

166 n.* (4th Cir. 2019) (per curiam) ("We are bound to follow Supreme Court

precedent.").

The Government's argument that the protective sweep was valid because it

"lasted only about three-and-a-half minutes" misapplies the Supreme Court's test.

*See* Gov't Br. 27. Under *Buie*, the question is not how many minutes the police

took to complete the protective sweep; instead, the question is whether the police

took more time than was needed to conduct a "cursory" inspection limited to the

spaces where a person could hide, and whether the police took more time than was

needed to effect the arrest and depart the premises. 494 U.S. at 335-36. Where

there is no dispute that the protective sweep in this case extended beyond the time

needed to arrest Mr. Everett and depart 1080 Ronald Reagan Drive, the protective

sweep was invalid under *Buie*. *See id.*

> B. The Government Cannot Rely on the Search Warrant Because There Was No Testimony that the Police Would Have Sought a Search Warrant Without Illegally Obtaining Evidence from the Sweep, and Because Officer Budden's Affidavit Did Not Establish Probable Cause Without the Tainted Evidence.

Under *Murray v. United States*, 487 U.S. 533, 542 (1988), evidence seized

pursuant to a subsequently issued warrant, although initially discovered during a

9

search following an illegal entry, is admissible so long as "a later, lawful seizure is genuinely independent of an earlier, tainted one." *See* Opening Br. 41. The Government agrees that *Murray* provides the applicable principles to assess the district court's alternative holding that what it called the "inevitable discovery doctrine," JA166, supported the denial of Mr. Everett's suppression motion. *See* Gov't Br. 30. The independent source doctrine[2] does not support the admission of the evidence seized pursuant to the search warrant that the police secured after the protective sweep.

Under *Murray*, a search pursuant to a warrant is not a "genuinely independent source of information" if "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." 487 U.S. at 542 (footnote omitted); *see* Gov't Br. 30 (citing two-part *Murray* test in *United States v. Hill*, 776 F.3d 243, 251 (4th Cir. 2015)). Mr. Everett showed in his opening brief that "[t]he seizure at 1080 Ronald Reagan Drive pursuant to the search warrant fails under both prongs of *Murray*." Opening Br. 41-44.

---

[2] The independent source doctrine, as opposed to the inevitable discovery doctrine, is at issue in this case. *See* Opening Br. 41; Gov't Br. 29-30 & n.2.

In response to Mr. Everett's showing of undisputed facts that the police had information from the ongoing drug trafficking investigation and from six hours of surveillance at Ronald Reagan Drive, but sought a search warrant only after the illegal warrantless search, Opening Br. 41-42, the Government offers the conclusory assertion that "[t]he officers' decision to obtain the search warrant was not prompted by their observations during the protective sweep," Gov't Br. 32. The Government cannot rely on case law where the defendant did not contest that the police would have sought a search warrant without the unlawful search. *Id.* at 32-33 (citing *United States v. Hill*, 776 F.3d at 252 & n.5; *United States v. Maxi*, 886 F.3d 1318, 1330 (11th Cir. 2018)). Mr. Everett argued in his opening brief that "the evidence shows that the decision to seek the search warrant was prompted by what the police saw during the illegal sweep." Opening Br. 41.[3] The Government argued below that the evidence at Ronald Reagan Drive inevitably would have been discovered, but the Government did not argue that the officers'

---

[3] The Government asserts that Mr. Everett "did not contest below" that the police would have sought the search warrant without the protective sweep. Gov't Br. 33. Mr. Everett argued in his suppression motion that the warrantless search at Ronald Reagan Drive was an illegal protective sweep. JA53-57. The Government argued in its response brief that if the sweep was illegal, the court nevertheless should deny the suppression motion because the evidence at Ronald Reagan Drive inevitably would have been discovered. JA76-77. The Government argued alternative grounds for denying the motion at the hearing, JA148-153, and Mr. Everett responded that the "motion to suppress should be granted," JA155.

11

decision to seek a search warrant was not prompted by what they saw during the protective sweep. JA76-78, JA152. None of the officers testified that they would have sought a search warrant had they not seen the incriminating evidence during the sweep, and the district court made no such finding. *See* JA93-170.

The search warrant also was not an independent source for the evidence seized at Ronald Reagan Drive because without the tainted evidence from the protective sweep, there was no probable cause. Opening Br. 43-44. The Government's recitation of evidence that Mr. Everett was allegedly involved in drug trafficking, Gov't Br. 31, does not provide probable cause to believe that evidence of drug trafficking would be found at Ronald Reagan Drive. *See United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir.1993) ("[T]he crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched.").

Officer Budden specifically tied the "observations made at 1080 Ronald Reagan Drive" to his conclusion that "further evidence to corroborate" his belief that Mr. Everett was a "high level dealer in a large drug trafficking organization" would be "found at 1080 Ronald Reagan Drive." JA179. The Government's response that Officer Budden's reference to "observations made at 1080 Ronald

12

Reagan Drive" would include observations during the surveillance does not support the conclusion that there was probable cause if the tainted evidence from the sweep is excluded. *See* Gov't Br. 32. While the Government cites the security cameras and the fact that Mr. Everett parked in the backyard behind a privacy fence as evidence that he was engaged in drug trafficking, Gov't Br. 31, those facts are innocuous when the police knew that Ms. Everett operated a daycare at the property, JA99, JA119. "[P]olice may rely on the totality of facts available to them in establishing probable cause, but they cannot disregard facts tending to dissipate probable cause." *United States v. Brinkley*, 980 F.3d at 387 (quotation omitted; alteration in *Brinkley*). It would not be surprising for a daycare to have security cameras and a privacy fence, or for Mr. Everett to avoid interfering with the pickup of children by parking behind the house.[4]

Detective Harding testified at trial that he believed the protective sweep is where the police "established probable cause for the search warrant." JA520. The Government cannot avoid this testimony by arguing that this Court will not consider trial testimony adverse to the district court's pretrial ruling on a motion to

---

[4] There was an attached garage where Mr. Everett could have parked if he wanted "to prevent the public and the police from knowing" he was there, Gov't Br. 20 (quoting JA85), another fact "tending to dissipate probable cause," *United States v. Brinkley*, 980 F.3d at 387.

suppress. Gov't Br. 34-35 (quoting JA520). In *United States v. Shreeves*, 698 F. App'x 131, 132 (4th Cir. 2017) (per curiam), this Court ruled that it would not consider trial testimony in reviewing the denial of a suppression motion where the witness who testified at trial for the defendant had not testified at the suppression hearing, and the defendant did not renew his motion to suppress at trial. *Id.* In this case, Detective Harding's testimony came during the Government's direct examination, and he volunteered that the sweep was the basis for establishing probable cause for the search warrant. JA520. Therefore, unlike the defendant in *Shreeves*, Mr. Everett did not plan to develop evidence favorable to the motion to suppress.[5] There was not probable cause to search 1080 Ronald Reagan Drive without the information from the warrantless sweep.

C. The Good Faith Exception to the Warrant Requirement Does Not Apply.

Mr. Everett showed in his opening brief that the actions of the experienced law enforcement personnel at Ronald Reagan Drive confirm that they knew there was not probable cause for a search prior to the illegal sweep. Opening Br. 45; *see supra* p. 13 (Detective Harding's testimony that police got probable cause based on sweep). The Government does not dispute that Officer Budden, the search

---

[5] The district court granted the Government's motion in limine to preclude consideration at trial of the constitutionality of the search. JA257.

warrant affiant and one of the experienced officers on the scene, expressly

affirmed that the basis for concluding that items to be seized would be found at the

home depended on what he observed during the illegal sweep.  Opening Br. 45;

*see* Gov't Br. 32.  As the Supreme Court made clear in *United States v. Leon*, the

"good-faith inquiry is confined to the objectively ascertainable question whether a

reasonably well trained officer would have known that the search was illegal

despite the magistrate's authorization."  468 U.S. 897, 922 n.23 (1984).  The well-

trained Fayetteville police officers would have known that the search of Ronald

Reagan Drive was illegal.

> D.     The Government Cannot Show that the Error in Admitting Evidence
>        Seized at 1080 Ronald Reagan Drive Was Harmless Beyond a
>        Reasonable Doubt.

The Government makes no argument that the admission of evidence from

the search was harmless with respect to Counts 6, 7, and 8.  Gov't Br. 38-39.  The

Government thus waives harmless error review as to these counts.  *See United

States v. Hall*, 858 F.3d 254, 280 n.8 (4th Cir. 2017).

Mr. Everett respectfully contends that the admission of evidence from the

search also was not harmless as to Counts 1, 4, and 5.  For the reasons argued in

his opening brief, Opening Br. 47-49, and below, *infra* pp. 16-17, there was

insufficient evidence to convict Mr. Everett on Counts 4 and 5, and the evidence

of the drugs and guns seized from Ronald Reagan Drive could have swayed the jury's determination that Mr. Everett also should be held accountable for the drugs (Count 4) and gun (Count 5) at Apartment 5. *See* Gov't Br. 12 (arguing that evidence Mr. Everett stored drugs and guns in his home supported guilty verdicts on Counts 4 and 5). The evidence seized from Ronald Reagan Drive also swayed the jury to convict Mr. Everett of conspiracy as charged in Count 1. *See United States v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009).

## II. THE GOVERNMENT OFFERED INSUFFICIENT EVIDENCE TO CONVICT MR. EVERETT.

Mr. Everett respectfully contends the Government did not offer sufficient evidence to establish his guilt on Counts 4, 5, and 6, and it was plain error for the district court to enter judgment of conviction on those counts. Opening Br. 46-50.

### A. The Government Did Not Prove Count 4, Aiding and Abetting Possession With Intent to Distribute Marijuana and Cocaine.

Mr. Everett showed in his opening brief that the Government submitted insufficient evidence to tie him to the drugs at Apartment 5 as charged in Count 4. Opening Br. 47-48. The Government cites the fact that Mr. Everett leased Apartment 5 with Mr. Davis, Gov't Br. 4, 12, 15, but "mere joint tenancy of a residence is insufficient to prescribe possession to all the occupants." *United States v. Morrison*, 991 F.2d 112, 115 (4th Cir. 1993). The Government also

16

highlights Austin Murray's testimony that Mr. Everett and Mr. Davis had an apartment together and were involved in drug trafficking.  Gov't Br. 13.  However, neither Mr. Murray nor any other witness testified that they had been to Apartment 5 or had any personal knowledge of the drugs or guns there.  The Government did not try to elicit that testimony from Mr. Murray, *see* JA577-637; the Government asked Mr. Godfrey if he had met with Mr. Everett at Apartment 5, but Mr. Godfrey testified he had never been there, JA722.  The Government presented insufficient evidence to prove Count 4.

> B.    The Government Did Not Prove Count 5, Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

The Government principally relies on the same evidence in arguing that the evidence was to sufficient to prove Count 5 as it cited in arguing that the evidence was sufficient to prove Count 4.  Gov't Br. 11-14.  The same lack of evidence and relevant legal principles that preclude conviction on Count 4 also preclude conviction on Count 5.  *See supra* pp. 16-17; Opening Br. 48-49.

> C.    The Government Did Not Prove Count 6, Possession With Intent to Distribute THC and Tramadol.

The Government does not challenge Mr. Everett's argument that "[p]ossession of a small quantity of drugs by itself is an insufficient basis from which intent to distribute may be inferred." *United States v. Fisher*, 912 F.2d 728,

730 (4th Cir. 1990); Opening Br. 49-50; *see* Gov't Br. 16-18.  Neither does the

Government dispute Mr. Everett's showing that the Government offered no

evidence that the quantities of THC and Tramadol seized were more than needed

for personal use.  Opening Br. 50; *see* Gov't Br. 16-18.  Evidence that Mr. Everett

was involved in drug trafficking, Gov't Br. 17, does not support an inference that

Mr. Everett possessed the THC and Tramadol with intent to distribute when there

was no evidence that he had distribution quantities of either drug.

Mr. Godfrey did not explain that "wax meant for resale is stored 'in the

freezer' because 'keeping it cold improve[s] the consistency when you need to

break it up for resale'" as the Government contends.  *See id.* 16 (quoting JA720-

721).  The bulk of the Government's quote is from a question by the prosecutor.

*See* JA721 ("Q: So would keeping it cold improve the consistency when you need

to break it up for resale?").  The Government presented evidence that the police

found a heat gun in the kitchen that would be "used to melt the wax that we

located in the freezer."  JA460.  The evidence thus showed that the THC was for

personal use, not distribution.  JA460, JA932.  The evidence was insufficient to

prove Count 6.

III.    THE DISTRICT COURT IMPOSED A PROCEDURALLY
       UNREASONABLE SENTENCE WHERE THE GOVERNMENT DID
       NOT PROVE THE DRUG QUANTITY UNDERLYING THE
       GUIDELINES RANGE.

The Government does not dispute that Mr. Everett had a due process right to

be sentenced based only on reliable and accurate information.  *See* Opening Br.

51-52; Gov't Br. 39-45.  The district court's drug weight determination was

erroneously based on Austin Murray's unreliable and exaggerated estimates of

Mr. Everett's alleged cocaine trafficking.  Opening Br. 52-54.

   A.    The District Court Erroneously Calculated the Guidelines Range
         Based on Austin Murray's Statement.

Nothing in the record supported the conclusion that Mr. Murray's statement

attributing 56 kilograms of cocaine to Mr. Everett had sufficient indicia of

reliability to support its probable accuracy.  *See* U.S.S.G. § 6A1.3(a).  At trial, the

Government had to use a leading question to elicit from Mr. Murray testimony

attributing only more than five kilograms of cocaine to Mr. Everett.  JA597 ("Q:

And so would it be fair to say that Mr. Everett got over five bricks from Romeo

while you were dealing with him?  A: Yes.").  Mr. Murray's statements were thus

not consistent, undermining any conclusion that they were reliable.  *See*, *e.g.*,

*United States v. Gray*, Nos. 94-5776, 95-5950, 94-5923, 95-5801, 94-5932, 1996

WL 397417, at *7 (4th Cir. July 17, 1996) (per curiam) (witness's information had

19

sufficient indicia of reliability where it was "generally consistent each time it was given"). Reliance on Officer Moore's testimony at the sentencing hearing to establish that Mr. Murray's statement to law enforcement was credible was unwarranted where Officer Moore testified that Mr. Murray's pretrial and trial statements were "consistent." JA1146; *see* Gov't Br. 40-41. The Government also contends that additional information corroborated Mr. Murray's statement to law enforcement, but that "corroboration" was limited to substantially lower drug quantities. *See* Gov't Br. 43-44. The district court's drug quantity finding was clear error. *United States v. Catala*, 134 F. App'x 617, 620 (4th Cir. 2005).

B.     The District Court's Procedural Error Was Not Harmless.

The Government cannot meet its burden to show that the district court's Guidelines error was harmless. *E.g.*, *United States v. Lewis*, 958 F.3d 240, 245 (4th Cir. 2020). Under this Court's "assumed error harmlessness" case law, "[a] Guidelines error is considered harmless if [the Court] determine[s] that (1) the district court would have reached the same result even if it had decided the guidelines issue the other way, and (2) the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014) (quotations omitted). This Court only reaches the second question once it is "certain that the result at

20

sentencing would have been the same," regardless of the Guidelines error. *United States v. Montes-Flores*, 736 F.3d 357, 370 (4th Cir. 2013) (quotation omitted), *superseded on unrelated grounds by* S.C. Code Ann. §§ 16-3-29, 16-3-600.

While Mr. Everett acknowledges that this Court has applied assumed error harmlessness review to uphold a sentence where the district court announced, as it did here, that it would have imposed the same sentence as a variance even if it erred in calculating the Guidelines range, *e.g.*, *United States v. Gomez-Jimenez*, 750 F.3d at 382, Mr. Everett respectfully contends that this Court cannot be certain that the district court would have imposed an upward variance in this case if it had not miscalculated the Guidelines range.

"[T]he Supreme Court has directed that when applying a departure provision or varying from the Guidelines range, the district court must give serious consideration to the extent of the departure or variance, and must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Montes-Flores*, 736 F.3d at 371 (quotations omitted). "Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an individualized assessment based on the particular facts of the case before it." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (quotation

21

omitted); *see Gall v. United States*, 552 U.S. 38, 50 (2007).  When the district

court fails to make that assessment on the record, this Court "cannot uphold the

sentence as procedurally reasonable or determine its substantive reasonableness."

*United States v. Carter*, 564 F.3d at 326.

The Guidelines are the "essential framework" for federal sentencing.  *See*

*Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).  The district court's

sentencing decisions must be "anchored by the Guidelines."  *See Peugh v. United*

*States*, 569 U.S. 530, 541 (2013).  "A district court contemplating a

non-Guidelines sentence must consider the extent of the deviation and ensure that

the justification is sufficiently compelling to support the degree of the variance."

*Id.* (quotation omitted).

The Government says that Mr. Everett's Guidelines range on the grouped

counts would be 235 to 293 months if based on the jury's drug quantity finding, as

opposed to the Guidelines range of 360 months to life determined by the Court.

Gov't Br. 45; JA1161.  The district court intended to impose a sentence at the

bottom of the Guidelines range on the grouped counts.  JA1178, JA1229.

However, the sentence imposed was sixty-three months higher than the top end of

the correct Guidelines range on the grouped counts.

As now-Chief Judge Gregory explained in his dissenting opinion in *Gomez-*

22

*Jimenez*, the district court's "simple statement" that it would have imposed the same sentence regardless of a Guidelines error does not provide certainty that the district court would have imposed the same sentence, "at least where the imposed sentence exceeds what would have been the Guidelines range absent the procedural error." *United States v. Gomez-Jimenez*, 750 F.3d at 389 (Gregory, J., dissenting). "The district court's explanation fails to distinguish its reasons for a within-Guidelines sentence from those for an above-Guidelines sentence, and thus fails to provide the necessary certainty to know it would have imposed the same sentence." *Id.*

Where, as here, a district court says it would impose a sentence that is either at the bottom of the Guidelines range, or well above the top of the Guidelines range, the district court's sentence is not "anchored by the Guidelines." *See Peugh v. United States*, 569 U.S. at 541. Because the federal sentencing scheme does not contemplate that the same justification simultaneously may be "sufficiently compelling" to support both a low-Guidelines range sentence and an upward variance from the Guidelines range, *see id.*, the district court's alternative sentence cannot be procedurally reasonable. To uphold Mr. Everett's sentence in this case would be to sanction two alternative sentences that are both affected by procedural error—one sentence based on an incorrectly calculated Guidelines range, and

23

another sentence based on unexplained upward variance from the Guidelines range.

For these reasons, the Government cannot show that the district court's procedural error is harmless, and Mr. Everett is entitled to remand for resentencing. *See United States v. Lynn*, 592 F.3d 572, 582 (4th Cir. 2010).

IV.    MR. EVERETT IS ENTITLED TO RESENTENCING BECAUSE HIS 480-MONTH SENTENCE IS SUBSTANTIVELY UNREASONABLE.

Mr. Everett received his first-ever criminal sentence in this case—480 months in prison for drug and firearm crimes, twice the median federal sentence for murder. *See* Opening Br. 57-58. Mr. Everett showed in his opening brief that this sentence, which may keep him in prison for the rest of his life, is substantively unreasonable. *See id.* 55-60.

The Government cannot defend the substantive reasonableness of the sentence by arguing that the district court made an adequate record of its consideration of the 18 U.S.C. § 3553(a) factors. *See* Gov't Br. 49. Mr. Everett does not challenge the sufficiency of the district court's recitation, but any failure in that regard would be a procedural error. *See Gall v. United States*, 552 U.S. at 51; *United States v. Carter*, 564 F.3d at 330. This Court has reversed a sentence as substantively unreasonable although "[t]he district court plainly sought to

24

intone all of the principles underlying § 3553(a)(2) when it announced its sentence." *See United States v. Howard*, 773 F.3d 519, 535 (4th Cir. 2014).

Although a presumption of reasonableness attaches to a within-Guidelines sentence, Gov't Br. 49, Mr. Everett contends that the district court committed procedural error in calculating the Guidelines range, resulting in a sentence above the Guidelines range, Opening Br. 51-54; *supra* section III. Even without a Guidelines error, the district court's 480-month sentence was roughly equivalent to a life sentence. Mr. Everett was thirty-six years old at the time of sentencing; he is a black, non-Hispanic male. JA1196. North Carolina life expectancy data thus suggest an additional life expectancy of about 39.6 years. *See* NCDHHS, *2018-2020 State-Level Life Expectancies by Age, Sex, Race and Race by Sex*.[6]

Contrary to the Government's argument, the Court may consider the length of Mr. Everett's sentence compared to the sentences often imposed for more serious crimes. *See* Gov't Br. 50; Opening Br. 57-58. The Government cites § 3553(a)(6), which requires a sentencing court to consider the need "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* Gov't Br. 50. According to the

---

[6] Available at https://schs.dph.ncdhhs.gov/data/lifeexpectancy/2018-2020/NorthCarolina2018-2020LifeExpectancies.html.

25

Government, because Mr. Everett and defendants found guilty of murder are not similarly situated, this Court should reject Mr. Everett's comparison of his sentence to the median sentence for murder. *See id.* But § 3553(a)(6) merely directs courts to consider avoiding unwarranted sentence disparities among similarly situated defendants; it does not limit the sentencing court's consideration of other information, including that Mr. Everett's conduct did not involve homicide or sexual violence. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *see also, e.g.*, *United States v. Wilson*, 860 F. App'x 657, 663 (11th Cir. 2021) (per curiam) (upholding sentence as substantively reasonable but considering sentencing data showing rarity of life sentences in cases not involving death). Mr. Everett showed that a 480-month sentence was greater than necessary to provide just punishment and to afford adequate deterrence when others who have committed more serious crimes are punished with lesser sentences. *See* Opening Br. 57-58.

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008), does not support the Government's argument. *See* Gov't Br. 50. The defendant in *Abu Ali* was convicted of crimes arising from his affiliation with an al Qaeda terrorist cell. 528

26

F.3d at 221.  Relying on § 3553(a)(6), the district court compared the defendant to

John Walker Lindh, who received a twenty-year sentence for his Taliban activities,

and Timothy McVeigh and Terry Nichols, who received a death sentence and a

life sentence, respectively, for their roles in the Oklahoma City bombing.  *See id.*

at 259.  The district court concluded that a downward variance to thirty years'

imprisonment was necessary to prevent unwarranted sentence disparities between

the defendant and Lindh.  *Id.*  On the Government's appeal, this Court ruled that

the district court erred by relying on the need to avoid unwarranted sentence

disparities under § 3553(a)(6) because the defendant was not comparable to Lindh.

*Id.* at 262-65.  Mr. Everett does not contend that a lesser sentence was necessary to

avoid an unwarranted disparity under § 3553(a)(6); rather, he showed that a 480-

month sentence was not necessary to punish and deter his criminal conduct, in part

by reference to sentencing data.  *See* Opening Br. 57-59.  *Abu Ali* does not prohibit

consideration of that data.

By arguing that Mr. Everett's criminal history category adequately

accounted for his recidivism risk, Gov't Br. 51, the Government fails to respond to

the data demonstrating a declining recidivism risk with age, *see* Opening Br. 59.

Mr. Everett's criminal history category does not account for his age, and nothing

in the record indicates that Mr. Everett will continue to pose a risk of recidivism

27

well into his seventies, requiring a forty-year sentence to protect the public from further crimes.  *See id.*

Mr. Everett does not contend that the district court should have considered his rehabilitative needs in deciding the length of his term of imprisonment.  *See* Gov't Br. 51.  Rather, as Mr. Everett showed in his opening brief, correctional treatment provided during his sentence can further reduce his risk of recidivism. Opening Br. 60.

Because the district court's 480-month sentence is substantively unreasonable, Mr. Everett is entitled to remand for resentencing.  *See id.* 55-60.

## CONCLUSION

For the reasons stated above and in his opening brief, Appellant Reshod Jamar Everett respectfully requests that the Court vacate his convictions as stated above, and remand for entry of judgment of acquittal or, in the alternative, a new trial or resentencing.

This the 28th day of June, 2023.

/s/ Paul K. Sun, Jr.
Paul K. Sun, Jr.
N.C. State Bar No. 16847
Kelly Margolis Dagger
N.C. State Bar No. 44329
ELLIS & WINTERS LLP
Post Office Box 33550
Raleigh, North Carolina  27636
Telephone:  (919) 865-7000
Facsimile:  (919) 865-7010

*Counsel for Appellant Reshod Jamar Everett*

29

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

A.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

      this brief contains less than 6,500 words, excluding the parts of the
brief exempted by Fed. R. App. P. 32(f).

B.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

      this brief has been prepared in a proportionally spaced typeface using
14 Point Times New Roman in WordPerfect 9.

This the 28th day of June, 2023.

              /s/ Paul K. Sun, Jr.
              Paul K. Sun, Jr.

              *Counsel for Appellant Reshod Jamar
Everett*

30

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on 28 June 2023, I filed the foregoing

Appellant's Reply Brief with the Clerk of Court using the CM/ECF system, which

will cause a copy thereof to be served on all counsel for the United States who

have entered a notice of appearance in this case.

This the 28th day of June, 2023.

/s/ Paul K. Sun, Jr.
Paul K. Sun, Jr.

*Counsel for Appellant Reshod Jamar Everett*

31